UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO.



GREAT LAKES REINSURANCE
(UK) PLC, a foreign corporation,

Plaintiff,

vs.

ORESTES FERNANDEZ, SR. and
ORESTES FERNANDEZ, JR.,

Defendants

## COMPLAINT FOR DECLARATORY JUDGMENT

The Plaintiff, GREAT LAKES REINSURANCE (UK) plc (hereinafter referred to as "GREAT LAKES"), by and through its undersigned counsel and pursuant to 28 U.S.C. §§2201 et seq., hereby files this action for declaratory judgment against the Defendants ORESTES FERNANDEZ, SR. and ORESTES FERNANDEZ, JR. (hereinafter referred to collectively as "FERNANDEZ"), as follows:

1.      This is an action for declaratory relief on a policy of marine insurance that is within this Court's admiralty and maritime jurisdiction arising under 28 U.S.C. §1333. The Complaint herein sets forth an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and the Supplemental Rules for Certain Admiralty and Maritime Claims.

2.      The Plaintiff, GREAT LAKES, is a foreign insurance entity incorporated and existing under the laws of the United Kingdom and, at all times material hereto, was the underwriter of a policy of marine insurance providing certain hull and machinery coverage for a 32' Black Hawk



vessel known as "Outta Control" owned by the ORESTES FERNANDEZ, JR.

3.      The Defendants are, upon information and belief, citizens and residents of the State of Florida and domiciled in Miami, Florida.

4.      The Plaintiff, GREAT LAKES, issued a policy of marine insurance to the Defendant, ORESTES FERNANDEZ, SR., providing, in pertinent part, coverage for a 2005 Black Hawk, USA 32' "Sea Hawk" vessel known as the "Outta Control", for a period of twelve (12) months, effective April 19, 2005 and expiring April 19, 2006. (See, Policy of Insurance No. 200/658/63853, attached hereto as Exhibit "A".) The vessel is insured for the sum of $130,000.

5.      On or about November 30, 2005, the insured vessel "Outta Control" sank while moored at its dock.

6.      After receiving notification of the loss, the Plaintiff, GREAT LAKES, immediately assigned the claim to Wager & Associates to investigate the loss and to survey the resulting damage to the vessel. Wager & Associates determined that the original design specifications for the vessel call for the vessel to be powered by two outboard engines. The named insured, ORESTES FERNANDEZ, SR., and/or the vessel's Owner/Operator, ORESTES FERNANDEZ, JR. added a third engine, a Mercury 250 horsepower outboard motor, against the recommendations and advice of the manufacturer. (See, Black Hawk USA's letter attached hereto as Exhibit B). The surveyor found that this modification predisposed the vessel to sinking.

8.      Based on the foregoing findings, Wager & Associated concluded that the additional weight of a third engine that was installed on the "Outta Control" rendered the vessel unseaworthy because the weight of the additional third engine significantly lowered the vessel's static waterline aft to the point that water could easily enter the hull though the transom door and the open "thru-hull"

Case No. 06-

Page 3

just above the waterline, such that it would overwhelm the vessel's bilge pumps and cockpit draining

capacity.

9.      The policy of insurance provides the following hull and machinery coverage for

Defendant's vessel.

> If a sum insured is shown for Section "A" of the insuring agreement declaration page, we provide coverage for accidental physical loss of, or damage to scheduled vessel which occurs during the period of this insuring agreement and within the limits set out in the insuring agreement declarations page, subject to the insuring agreement provisions, conditions, warrantees, deductibles and exclusions.

See, Policy of Insurance, page 2, Exhibit "A". The coverage is subject to the following pertinent exclusions, conditions and warranties:

### Exclusions to Coverage A

Unless specifically agreed by us in writing and additional premium charged, the following losses are not covered by this insuring agreement:

* * * *

(e) manufacturing defects or design defects, including latent defects.

See, Policy of Insurance, page 3, Exhibit "A".

* * * *

### General Conditions & Warranties

* * * *

(b)      It is warranted that the scheduled vessel is seaworthy at the inception of the insuring agreement. Violation of this warranty will void this agreement from its inception.

c)      This insuring agreement does not cover any loss or damage caused by your failure to exercise due diligence to manage the scheduled vessel or maintain it in a seaworthy condition;

d)      This insuring agreement incorporates in full your application for insurance and it constitutes the entire contract between us . . . .

* * * *

(n)  This contract is null and void in the event of a non-disclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision.

10.  The Yacht Application states, above the applicant's signature, as follows:

> **PLEASE READ BEFORE SIGNING APPLICATION**
> 1. This application will be incorporated in its entirety into any relevant policy of insurance where insurers have relied upon the information contained herein.
> 2. **Any misrepresentation in this application for insurance, will render insurance coverage null and void from inception. Please therefore check to make sure that all questions have been fully answered and that all facts material to your insurance have been disclosed, if necessary by a supplement to the application.**

Yacht Application for insurance, p. 2, Exhibit "C".

11.  The Defendants are identified as operators of the vessel on the Yacht Application for insurance. Pursuant to the definition of terms in the policy, an operator is deemed to be a "Covered Person". (See, Yacht Application and Policy attached as Exhibits "C" and "A" respectively.)

12.  The Plaintiff's investigation revealed that the vessel was unseaworthy prior to and at the inception of the policy, and that the Defendants (a) failed to disclose that the vessel was modified by the addition of an 670 lb., 250 HP engine against the manufacturer's recommendation, (b) failed to disclose that the Defendant, ORESTES FERNANDEZ, JR., is the Owner of the insured vessel; (c) failed to disclose that the Defendant, ORESTES FERNANDEZ, JR., had entered into an agreement with the vessel's manufacturer, Black Hawk USA, stating that Black Hawk did not recommend the addition of a third engine and that FERNANDEZ waived all liability arising from the addition of a third engine to the vessel; and (d) failed to disclose that the vessel owner and operator, ORESTES FERNANDEZ, JR., has an extensive history of auto/traffic violations, as well as an extensive

Case No. 06-

criminal history, including multiple arrests and convictions for cocaine possession and grand theft. (See, Yacht Application for insurance, attached as Exhibit "C".)

13.     Plaintiff has brought this action pursuant to 28 U.S.C. §§ 2201 et seq. for the purposes of determining a question in actual controversy between the parties regarding coverage under the subject policy of marine insurance.

WHEREFORE, the Plaintiff, GREAT LAKES, respectfully requests the Court to adjudge that said policy is void from its inception and does not provide coverage for the claimed hull and machinery loss due to the Defendants' failure to disclose facts material to the risk and/or due to the vessel being unseaworthy prior to and at the inception of the policy. On this basis, Plaintiff respectfully requests the Court to enjoin and restrain Defendants from instituting any action against Plaintiff for recovery under the policy or any part thereof, or for failure to pay the claim, pending determination of this action and to declare that the obligations of the Plaintiff herein are non-existent or limited in a manner to be proven at the time of trial.

Dated this 26th day of April 2006.

Respectfully submitted,

JONATHAN W. SKIPP
Florida Bar No. 710570
jonathans@admiral-law.com

HORR, NOVAK & SKIPP, P.A.
One Datran Center, Suite 1104
9100 S. Dadeland Boulevard
Miami, Florida 33156
Telephone: 305-670-2525
Telefax: 305-670-2526
Attorneys for Plaintiff

# T L Dallas
**(Special Risks) Ltd.**

## Cover Note

### Policy No: 200/658/ 63853

Dallas House, Low Moor
Bradford, BD12 0HF
Tel: 01274 465500
Fax: 01274 465502/3

In accordance with your instructions we have effected the following cover on your behalf subject to the terms and conditions in the policy wording and endorsements attached.

| Assured : | Producer : |
|---|---|
| Orestes C Fernandez Sr<br>PO Box 558848<br>Miami<br>FL 33255 | Performance Marine Associates<br>2525 Marina Bay Drive West<br>Suite 204<br>Fort Lauderdale<br>FL 33312 |

| | | | |
|---|---|---|---|
| **Vessel Name:** | Outta Control | **Model:** | Performance Boat |
| **Year:** | 2004 | **Maker:** | Blackhawk |
| **ID Number:** | IT30030H405 | **Length:** | 31 ' |
| **Engines:** | Gasoline | **Type:** | Mercury Triple 250hp |

**Period of Cover:** With effect from   April 19, 2005 00.01 LST   to   April 19, 2006 00.01 LST

**Cover and Respective Insured Limits:**

| Section: | Sum Insured: | Deductible: |
|---|---|---|
| A) Hull | 130,000 | 3,900 |
| Tender | Not Covered | |
| Towing | Not Covered | |
| B) P + I | 300,000 | 1,000 |
| Crew Liability | Not Covered | |
| Commercial Passenger Liability | Not Covered | |
| C) Medical Payments | 5,000 | 100 |
| D) Uninsured Boaters | 25,000 | 500 |
| E) Trailer | 5,000 | 500 |
| F) Personal Property | Not Covered | |

**Total Premium :**   US$ 4225.00 C.R.O. + US$25 Certificate Fee.

In the event of cancellation by the Assured minimum of 25% of premium deemed earned. All fees earned at inception.



**Continuation Cover Note for Policy No: 200/658/ 63853**

| | |
|---|---|
| **Laid Up Period :** | None |
| **Navigational Limits :** | Inland & coastal waters of Florida only - Not to exceed 20 miles offshore. |
| **Conditions :** | as per TLD/3/PPO |
| **Warranties:** | Warranted Private and Pleasure use only. |
| | Named Windstorm Deductible Clause. |
| **Endorsements :** | Limited Pollution Coverage Endorsement |
| **Special Warranties or Conditions :** | Warranted maximum speed not to exceed 60 mph. |

**Security as approved and agreed by you:**

100% Great Lakes
Reinsurance (UK) plc per
Belmarine SA contract no:
200/658

**Loss Payee :** Eastern Finance Florida Credit Union, PO Box 822300, South Florida, FL 33082

Date : Tuesday, April 19, 2005      .....................................................................

For and on behalf of Participating Underwriters

## PRIVATE AND PLEASURE YACHT INSURING AGREEMENT WORDING

### 1. DEFINITIONS

a)  "You and your" refer to the insured named on the declaration page.

b)  "We, us and our" refer to the insurers named on the declaration page or accompanying schedule of insurers.

c)  "Covered person." means you, or any person detailed on your application form which has been submitted and approved by us. This does not include either a paid captain and/or crew, or a person or organisation, or their employee or agent, operating a marina, boatyard, yacht club, charter operation, sales agency, refuelling dock or similar organisations.

d)  "Scheduled vessel" means the vessel described on the declaration page, including machinery, electrical equipment, sails, masts, spars, rigging, furniture, dinghy, outboard motor and all other equipment normally required for the operation and maintenance of the vessel and which would normally be sold with the vessel.

e)  "Trailer" refers to the insured vessel's trailer, used exclusively for that purpose.

f)  Words of masculine gender are deemed to encompass the female gender and vice versa. Words in the singular are deemed to encompass the plural and vice versa.

g)  "Navigational limits" means all waters as limited and shown on the declaration page unless mutually agreed by us and amended in writing.

h)  "Salvage charges" means those reasonable charges and expenses which are incurred by you if necessary to prevent damage, injury or loss of life and with our permission to prevent or minimise any further loss or damage covered by Section "A" of your insuring agreement.

i)  "Deductible" A deductible is the first amount of any claim, which must be paid by you. If a deductible is applicable to any section of your insuring agreement the amount will be shown on the declaration page and this amount shall be deducted from the amount payable on each admissible claim.

j)  "Bodily injury/property damage" means bodily injury or property damage occurring during the period of this insuring agreement arising from ownership and/or use of the vessel.

k)  "Seaworthy" means fit for the Vessel's intended purpose. Seaworthiness applies not only to the physical condition of the Hull, but to all its parts, equipment and gear and includes the responsibility of assigning an adequate crew. For a vessel to be seaworthy, it and its crew must be reasonably proper and suitable for its intended use.

l)  "Sinking" means when the vessel has sunk as far as is physically possible for the vessel to sink, and is totally submerged under water.

m)  'Family' means any person related to you by blood, marriage or adoption, including wards and foster children.

n)  'Personal Property' means property purchased and owned by you, any covered person, any member of your family, provided that such property is situated on the vessel insured hereunder at the time of the loss, excluding 'scheduled vessel' as defined in (d) above.

o) 'Race or speed trial' means any event involving speed and or of a competitive nature. including, but not limited to. Regattas and or Rallies. "Preparing for a race or speed trial." means any navigation of the vessel necessary to ensure eligibility of either you or your vessel to participate in a race or speed trial.

p) "Named Windstorm" damage is damage relating to or resulting from a named windstorm or any numbered tropical weather pattern from the time the "named windstorm" or numbered tropical weather pattern impacts the area and until 72 hours later.

The area of the "named windstorm" or tropical weather pattern is an area encompassed by a circle of radius not exceeding 150 nautical miles from the path of the storm's forward travel.

## 2. INSURING AGREEMENT

This is a legally binding insurance contract between you and us. incorporating in full the application form signed by you. We will provide the insurance coverage described in this insuring agreement, in return for payment to us of the premium due and compliance by covered persons with the provisions. conditions and warranties of this insuring agreement.

## 3. Coverage A, Hull, Machinery, Equipment and Dinghy

If a sum insured is shown for section "A" of the insuring agreement declaration page. we provide coverage for accidental physical loss of. or damage to scheduled vessel which occurs during the period of this insuring agreement and within the limits set out in the insuring agreement declarations page. subject to the insuring agreement provisions. conditions. warranties. deductibles and exclusions.

Reasonable expenses incurred by you in attempting to avert or minimise a loss covered by this insuring agreement will be paid by us whether successful or not. These will be paid in addition to the sum insured under section "A" and "F" without application of the insuring agreement deductible, but a coinsurance provision applies whereby we pay 80% and you pay 20% of such expenses. Our maximum liability for these expenses is 80% of the sum insured under section "A" of this insuring agreement.

We will pay salvage charges incurred by you occasioned by a peril covered by this insuring agreement. up to the limit of the sum insured under section "A" of this insuring agreement.

If the Insured vessel shall come into collision with any other ship or vessel and you. in consequence thereof. become legally liable to pay by way of damages to any other person or persons any amount not exceeding the agreed value of the vessel hereby insured, we will reimburse you such amount paid. up to the agreed value hereby insured. If your liability has been contested, and consent has been given by us in writing. we will also pay the costs thereby incurred and paid. If both vessels are to blame then. unless the liability of the owners of one or both vessels becomes limited by law. claims under this section shall be settled on the principles of cross liabilities. as if the owners of each vessel had been compelled to pay the owners of the other vessel(s) such as one half or other proportion of the latter's damages as may have been properly allowed in ascertaining the amount payable by or to you in consequence of such a collision. This principle shall apply in cases where both vessels are owned in part or in whole by you and all questions of responsibility and amount of liability between two vessels shall be left to a single Arbitrator. or if we are unable to agree upon a single Arbitrator then one shall be appointed by you and one shall be appointed by us. The two Arbitrators chosen may then choose a third Arbitrator and the decision of such single. or any two of such three Arbitrators appointed as above shall be final and binding.

In no case shall the foregoing clause extend to cover any amount you become legally liable to pay in respect of removal of obstructions under statutory powers or for injury or damages to Harbours. Wharves. Piers. Stages and similar structures consequent on such collisions. or in respect of the cargo or engagements of the Insured vessel or for loss of life or personal injury.

Whilst the scheduled vessel is afloat theft coverage shall exclude theft or mysterious disappearance of its equipment or personal property unless occurring in conjunction with theft of the entire scheduled vessel or unless there is visible evidence of forcible entry and/or removal; made by tools, explosives, electricity or chemicals.

Whilst the scheduled vessel is on land, coverage is restricted to theft of the entire scheduled vessel including its equipment from a locked garage or locked storage building, or from such other storage place and subject to such other storage conditions, as we have prior approved in writing.

While the scheduled vessel is stored on a trailer coverage is restricted to theft of the entire scheduled vessel including its equipment from a locked garage or locked storage building or a locked fenced enclosure.  If secured to a vehicle it must be secured with a trailer ball lock.  It is understood and agreed that this insuring agreement does not cover loss or damage caused by the theft of your vessel and/or equipment while stored on a trailer unless occasioned by person or persons making forced entry into the locked fenced enclosure, garage or building and by destruction of the ball lock.  Theft must be accompanied by actual force and violence of which there shall be visible marks made by tools, explosives, electricity or chemicals.

In any event a deductible of 10 % of the agreed hull value of the scheduled vessel and/or equipment is to apply to each theft loss, including total loss of the scheduled vessel. However a deductible of 5 % of the agreed hull value of the scheduled vessel shall apply to each theft loss including total loss where the scheduled vessel is stored and or moored in a recognised commercial storage yard or marina.

The deductible shown on the insuring agreement declaration page shall apply to each claim under the insuring agreement except for claims for actual and/or constructive and/or compromised total loss of the scheduled vessel and claims for expenses incurred in attempting to avoid or minimise a loss covered by the insuring agreement, theft losses as referred to above and from a named windstorm as described below.

Loss or damage to the scheduled vessel arising from a Named windstorm shall be subject to a deductible which shall apply to all claims, including Actual and/or Constructive and/or Compromised Total Loss of the insured vessel, equal to double the Hull and Machinery deductible as shown on the declaration page.

## Exclusions to Coverage A

Unless specifically agreed by us in writing and additional premium charged the following losses are not covered by this insuring agreement:

a)    Damage sustained by scheduled vessel whilst being transported over land, more than 100 miles from the normal place of storage.

b)    Losses due to wear and tear, gradual deterioration, lack of maintenance, inherent vice, weathering, insects, mould animal and marine life.

c)    Marring, scratching or denting.

d)    Osmosis, blistering or electrolysis.

e)    Manufacturing defects or design defects, including latent defects.

f)    Unrepaired damage claims if the scheduled vessel is subsequently an actual or constructive total loss, due to an insured peril, during the insuring agreement period.

g)    Losses caused directly or indirectly by ice or freezing.

**TLD/3/PPO**                                                             Page 3 of 12

h)   Theft of the dinghy or tender and/or its outboard motor unless stolen together with the insured scheduled vessel from a storage place approved by us for theft coverage, or unless there is visible evidence of forcible entry and or removal made by tools, explosives, electricity or chemicals.

i)   Loss and or damage to the dingy and or tender whilst being towed behind the scheduled vessel.

j)   Damage to the scheduled vessel caused by theft, and/or attempted theft unless coverage would have been provided under the theft provisions and restrictions detailed in Section A.

k)   Your personal expenses or those of your family including but not limited to, cost of your own labour, hotel or accommodation costs, car rental, communication costs.

l)   Losses caused by delay and or loss of use and or enjoyment of the scheduled vessel and or its equipment.

## 4. Coverage B. Third Party Liability

If a sum insured is shown under section "B" of the insuring agreement declaration page, we provide coverage for any sum or sums which you or any other covered person become legally liable to pay and shall pay as a result of ownership or operation of scheduled vessel.

We will settle or defend as we deem appropriate any claims or suits brought against you, using attorneys of our choice.  Our obligation to settle or defend all third party liability claims under this insuring agreement ends when the amount we pay for damages, legal expenses and removal of wreck equals the sum insured under this section of the insuring agreement.

The deductibles shown on the insuring agreement declaration page shall apply to each third party liability claim.

### Exclusions to Coverage B

Unless specifically agreed by us in writing and an additional premium paid, Liability cover is not provided for:

a)   Covered persons with regard to their liability to you, other covered persons, your spouse, other members of your family or persons who reside in your household.

b)   Your liability to other covered persons, your spouse, other members of your family or persons who reside in your household.

c)   Liability assumed by you under any contract or agreement.

d)   Liability which arises while the scheduled vessel is being transported on its own trailer or otherwise, except where the vessel is being hauled out or launched by a covered person.

e)   Fines or penalties imposed by any Government agency.

f)   Punitive damages.

g)   Liability due to pollution by any substance whether it be gradual, or sudden and accidental.

h)   Intentional acts.

i)   Bodily injury or death benefits which are required to be or are covered by any State or Federal Act or Statute.

**TLD/3/PPO**                                                              Page 4 of 12

j)      Bodily injury or death benefit to any persons employed by a covered person, hired as crew or not.

k)      Liability to persons being towed, or to be towed, or having been towed in the water or in the air, from the time they commence to leave the scheduled vessel, until they are safely back on board. This exclusion however shall not extend to non competitive water skiing for which limited coverage is provided below

l)      Liability to snorklers and divers operating from the scheduled vessel, from the time they commence to leave your vessel, until they are safely back on board.

m)      Liability to fare paying passengers or passengers carried under charter.

n)      Liability for damage to any marine estuary, artificial or natural reef, living or dead coral or other marine organisms, caused by the vessel or its operators or passengers.

o)      Loss or damage to any other vessel caused by the vessel insured in so far as the same would have been covered under section "A" of this insuring agreement.

p)      Liabilities, medical expenses, costs, fees or any other related expense whatsoever arising out of illness or injury in any way related to or caused by exposure to the sun or the suns rays either cumulatively or suddenly.

q)      Any claim arising from directly or indirectly caused by or associated with Human T-Cell Lymphotropic Virus type III (HILV II) or Lymphadenopathy Associated Virus (LAV) or the mutants derivatives or variations thereof or in any way related to Acquired Immune Deficiency Syndrome or any syndrome or condition of a similar kind howsoever it may be named.

## Coverage B, Water Skiing Coverage Limitation of Liability

Whilst the Insured vessel is being used for water skiing, the third party liability limits are reduced to :

| | |
|---|---|
| Property damage | US $10,000 |
| Bodily Injury | US $10,000 |
| Maximum any one incident | US $20,000 |

These limits shall apply from the time any person or persons begin to leave the scheduled vessel, or such activity commences, and will continue until the person or persons are safely back on board or such activity ceases completely. Nothing herein contained shall be held to vary waive or extend any of the exclusions conditions or other terms of this insuring agreement.

## Coverage B, Extension to include Crew Liability

Subject to our prior written agreement and your payment of an additional premium, we may at your request extend this insuring agreement to cover maintenance and cure and/or Jones Act Liability for hired crew. We reserve the exclusive right to set the terms, conditions and sum insured in respect of such coverage, or to decline your request.

The maximum amount recoverable in respect of crew liability claims shall be the amount shown on the insuring agreement schedule and shall form part of the maximum recoverable under Section "B", Third Party Liability.

## 5. Coverage C, Medical Payments

If a sum insured is shown under section "C" of the insuring agreement declaration page, we will pay reasonable medical and funeral expenses necessary due to accidental bodily injury of third parties, incurred whilst boarding, leaving or onboard the scheduled vessel insured under this insuring

**TLD/3/PPO**                                           

agreement. These expenses must be incurred within one year from the date of the accident and will reduce any amount payable under section "B" of this insuring agreement, arising from the same occurrence.

This coverage will be excess over any other applicable insurance.

Any sum insured under this section is our maximum liability for all claims arising from any one event, regardless of the number of persons involved. Any payment made by us under this section is not an admission of liability for you or by us.

The deductible shown on the insuring agreement declarations page shall apply to each claim made under this section of the insuring agreement.

### Exclusions to Coverage C

We do not provide medical payment coverage for:

a) Covered persons, their spouses, family or other persons who reside with them. Employees of covered persons or anyone that is or should be covered under a State or Federal Act or Statute.

b) Responsibility assumed under any contract or agreement.

c) Anyone injured whilst the scheduled vessel is being transported, hauled out or launched.

d) Trespassers on the scheduled vessel.

e) Anyone to or for whom benefits are payable under any Workers Compensation or under "Federal Longshoreman's and Harbour Workers Compensation Act".

## 6. Coverage D, Uninsured Boaters

If a sum insured is shown under section "D" of the insuring agreement declaration sheet, coverage is provided in respect of sums which covered persons under this insuring agreement are legally entitled to recover from a third party vessel owner or operator, but which cannot be recovered either because they have no marine liability insurance and no realisable assets or they cannot be identified, such as a hit and run operator.

The deductible shown on the insuring agreement declaration page shall apply to each claim made under this section of the insuring agreement.

The sum insured in respect of this coverage is our maximum liability for all uninsured boater claims regardless of the number of people involved and the number of claims made.

### Exclusions to Coverage D

We do not provide coverage for:

a) Claims settled without our prior written consent.

b) Loss due to an uninsured vessel which is a Government vessel.

c) Loss due to a vessel operated by a covered person.

d) Loss where no physical damage to the scheduled vessel exists, evidencing collision.

**TLD/3/PPO**                                                           Page 6 of 12

## 7. Coverage E, Trailer

If a sum insured is shown under section "E" of the insuring agreement declaration page, we provide coverage for accidental physical loss of or damage to the trailer if it is used exclusively for the transportation of the scheduled vessel insured under this insuring agreement, up to the sum insured.

Claims will be paid up to the limit of the sum insured, on the basis of the actual cost of repairing or replacing the trailer with a trailer of like kind and value. Depreciation due to age and wear and tear will be taken into account in calculating claims under this insuring agreement.

Reasonable expenses incurred by you in attempting to avert or minimise a loss covered by this insuring agreement will be paid by us, whether successful or not. These will be paid in addition to the sum insured under section "E" without application of the insuring agreement deductible, but a coinsurance provision applies whereby we pay 80% and you pay 20% of such expenses.

Theft of the trailer is covered if the trailer is stolen from a marina, locked garage or locked storage building, or from such other storage place and subject to such storage conditions as we have prior approved in writing.

The deductible shown on the insuring agreement declaration page shall apply to each claim under the insuring agreement except for claims for actual or constructive total loss of the scheduled vessel plus trailer and claims for expenses incurred in attempting to avoid or minimise a loss covered by the insuring agreement.

### Exclusions to Coverage E

a)     Damages sustained by scheduled vessel whilst being transported over land, more than 100 miles from the normal place of storage.

b)     Losses due to wear and tear, gradual deterioration, lack of maintenance, weathering, insects, mould animal or marine life.

c)     Marring, scratching or denting.

d)     Manufacturing defects or design defects, including latent defects.

e)     Tyre damage.

e)     Losses due to exceeding manufacturers maximum load or speed specifications.

f)     Your personal expenses or those of your family including but not limited to, cost of your own labour, hotel or accommodation costs, car rental, communication costs.

## 8. Coverage F, Personal Property

If a sum insured is shown under section "F" of the insuring agreement declaration page, we will cover direct loss or damage to personal property from any accidental cause, whilst property is onboard, being loaded onto, or unloading from the scheduled vessel. Theft losses shall only be recoverable in accordance with the conditions detailed under Section "A". Our maximum liability in respect of all claims arising from one event is the amount of the sum insured and our maximum liability for any one item, pair or set is $1,000.

Fishing gear and tackle, unless permanently affixed to the scheduled vessel, is deemed personal property.

Claims will be settled on the basis of actual cash value of personal property, less the insuring agreement deductible.

**TLD/3/PPO**                                                    Page 7 of 12

We will not cover loss or damage to:

a)   Money, jewellery, watches, travellers cheques or any form of paper of value, furs, china, glass, silverware, antiques, collectibles or computer software.

b)   Fishing gear or tackle which is permanently affixed to the scheduled vessel, unless the scheduled vessel insured hereunder shall become an actual or constructive total loss, due to a peril insured against.

We will not cover losses due to:

a)   Wear and tear, gradual deterioration, inherent vice, corrosion, damage due to changes in humidity or temperature or mechanical or electrical failure.

b)   Breakage of articles of a brittle nature unless caused by the scheduled vessel being stranded, sunk, burnt, on fire, or in collision or by stress of weather, burglars or thieves.

c)   Loss of water-skis or diving equipment, unless as a result of fire, or theft following forcible entry, or a total loss of the scheduled vessel.

## 9. General Conditions & Warranties

a)   It is warranted that the scheduled vessel shall be used solely for private and pleasure purposes, and will not be used for Charter, hire lease or any other commercial activity.

b)   It is warranted that the scheduled vessel is seaworthy at the inception of the insuring agreement. Violation of this warranty will void this insuring agreement from its inception.

c)   This insuring agreement does not cover any loss or damage caused by your failure to exercise due diligence properly to manage the scheduled vessel or maintain it in a seaworthy condition.

d)   This insuring agreement incorporates in full your application for insurance and it constitutes the entire contract between us. At your request, various provisions of this insuring agreement may be varied by us but only by our prior written agreement.

e)   This insuring agreement does not cover any loss or damage which occurs after its expiration. However, if you have been at sea in the scheduled vessel for at least 24 hours and this insuring agreement expires other than due to cancellation, you may renew or reinstate the insuring agreement at such time as the scheduled vessel arrives safely at its next port of call and for a further 24 hours provided that you contact us during that 24 hours and make the necessary arrangements as may be required by us to renew or reinstate the insuring agreement.

f)   This insuring agreement may be cancelled by either you or us at any time, subject to 10 days prior written notice. If it is cancelled by us, we will pay you a pro rata return of premium. If it is cancelled by you, we shall pay you a short rate return of premium calculated as pro rata less 10%. However if a reduced premium has been charged in consideration of a period of lay up, the return premium will be calculated based upon the actual activity of the scheduled vessel, and then pro rata or short rate applied. Cancellations due to sale of the scheduled vessel or non-payment of premium, or non-payment of premium instalment to a premium financier are deemed cancellations by you. All policy fees are deemed earned at the inception of the policy.

g)   If you sell or pledge the scheduled vessel or otherwise transfer ownership in part or in full, this insuring agreement is immediately cancelled by your action unless you have our prior written agreement to the contrary.

h)   In the event of a claim under this insuring agreement for an actual or constructive total loss, the annual premium is deemed fully earned.

i)   It is hereby agreed that your brokers or any substituted brokers (whether surplus line approved or otherwise), shall be deemed to be exclusively the agents of you and not of us in any and all matters relating to, connected with or affecting this insurance. Any notice given or mailed by or on behalf of us to the said brokers in connection with or affecting this insurance, or its cancellation, shall be deemed to have been delivered to you.

j)   We need not accept or pay for any property abandoned by you. At our option however we are entitled to the salvage value of any property or equipment where we have settled a claim in full under this insuring agreement, in respect of such property or equipment.

k)   It is warranted that covered persons must at all times comply with relevant Statutes, Laws, by-laws and US Coast Guard and other regulations, governing the use of the scheduled vessel.

l)   If the scheduled vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is properly installed and is maintained in good working order. This includes the weighing of tanks once a year and recharging as necessary.

m)   If you give up your rights or our rights to recover damages from anyone who may be liable to you, denying us the benefit of the right of recovery, payment of any admissible loss under this insuring agreement shall be reduced by the amount we have been denied.

n)   This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision.

o)   We will not pay for any loss resulting from i) radioactive contamination, or nuclear reaction ii) pollution or contamination by any substance iii) war declared or not, civil war, insurrection, rebellion, revolution or the consequences of any of these.  iv) Capture, seizure, arrest, restraint or detainment by any government power or authority, lawful or otherwise.

p)   If we take steps to protect damaged or endangered property, this does not constitute acceptance of abandonment of that property by us.

q)   If any covered person has other insurance against property damage loss covered by this insuring agreement, we will only pay the proportion of the claim which our sum insured bears to the total of all the sums insured covering the loss.  If this insuring agreement provides liability coverage, this insurance shall be excess over all other valid and collectible liability insurances.

r)   Unless we specifically agree in writing, and the appropriate endorsement is issued, this insurance does not cover loss or liability incurred during a race or speed trial or during preparation for a race or speed trial.

s)   Unless we agree in writing to the contrary, if we request a survey of the scheduled vessel then such survey must be received by us within 30 days of the effective date of this agreement.  If the survey makes any recommendations with respect to the scheduled vessel, then it is an express warranty of this agreement that all such recommendations are completed prior to any loss giving rise to any claim hereunder, by skilled workmen using fit and proper materials and that either.

   1) The surveyor who carried out the survey certifies in writing that all recommendations have been completed to his (the surveyors) satisfaction prior to any loss and/or claim

   Or,

   2) The workmen/repair yard that carried out the said work and/or recommendations certifies in writing that all recommendations have been completed prior to any loss and/or claim. Failure to comply with this warranty will void this agreement from inception.

**TLD/3/PPO**

t)      In no event shall this insurance cover any loss, damage, expense or liability of whatever nature, which might otherwise be recoverable under this insuring agreement arising out of or in any way connected with, whether directly or indirectly, the use or operation of any computer, computer system, computer software, programme or process or any electronic system where any such loss, damage, expense or liability arises directly or indirectly, as a consequence of a) the date change to the year 2000 or any other date change and/or b) any change or modification of or to any such computer, computer system, computer software, programme or process or any electronic system in relation to any such date change.

u)      The scheduled vessel shall be valued at the agreed valuation shown on the declaration page or on any endorsement thereto issued by us. However the following items are subject to payment on the basis of depreciated cash value less the applicable deductible .Depreciated cash value means replacement cost less the annual percentage factor of depreciation shown as follows:

A)  Internal and/or external paints, finishes, gelcoat or other covering - 10% per annum
B)  Bottom paint including but not limited to anti-foul or barrier coat finishes- 50% per annum
C)  Sails, standing and running rigging - 12.5% per annum
D)  Internal and/or external protective covers, canvas, vinyl and other materials - 20% per annum
E)  Internal and/or external upholstery, fabrics, wall coverings, carpets and rugs - 10% per annum
F)  Machinery including but not limited to engines, generators, water makers and waste systems - 7% per annum
G)  Outboard Motors - 20% per annum
H)  Outdrives, propellers, shafts, rudders, struts, couplings, trim tabs, stabilisers  - 20% per annum
I)  Batteries and solar charging panels - 20% per annum
J)  Electrical equipment including but not limited to internal and external appliances, winches, pump motors and electric deck gear  - 10% per annum.
K)  Mast and spars – 5% per annum.
L)  Stanchions and lifelines – 10% per annum.
M)  Inflatable, tenders or dinghies – 12.5 % per annum.
N)  Hard FRP, composites, aluminium or wood tenders or dinghies – 10% per annum.

The cost of dry docking and/or lay-days shall be adjusted in accordance with the required time to complete the repair of covered losses.

However in no event shall the depreciation value be less than 20% of the replacement cost. Reasonable labour costs to repair or replace the damaged items following a recoverable claim shall be payable in full subject always to the applicable deductible

If the hull is made in whole or in part of plywood, fibreglass, metal or other material of similar nature its repair shall be made by applying suitable patches to the damaged hull area in accordance with generally accepted good repair practice. This insuring agreement does not cover the cost or expense of painting or impregnating colour beyond the immediate damaged area or areas.

We have the right to settle any physical loss or damage claim under this insuring agreement, either by making payment to you of the estimated loss agreed between you and us, or by making repairs or replacements, like with like, for your lost or damaged property.

v)      No suit or action on this Insuring agreement for the recovery of any claim shall be sustainable in any court of law or equity unless the Assured shall have fully complied with all the requirements of this Insuring agreement, nor unless commenced within one (1) year from the date of the happening or the occurrence out of which the claim arose, provided that where such limitation of time is prohibited by the laws of the state wherein this Insuring agreement is issued, then, and in that event, no suit or action under this Insuring agreement shall be

**TLD/3/PPO**

sustainable unless commenced within the shortest limitations permitted under the laws of such state.

w) Where a lay up "laid up period" has been specified within the declaration page. it is warranted that the scheduled vessel will not be used, navigated or utilised, in any manner whatsoever, during the dates so specified.  "Use" includes. but is not restricted to, living on board the scheduled vessel.

## 10. Your Duties In The Event Of A Loss

1) Immediately take all possible steps to minimise the loss and protect the scheduled vessel from further loss.  Failure to do so may invalidate your insurance coverage or reduce the amount of any claim hereunder.

2) As soon as possible give us notification of the loss and its circumstances.

3) Comply with any reasonable request made of you, by us with regard to the loss.

4) Advise the Police, Coast Guard, or any appropriate authority of the loss and its circumstances.

5) Give us an opportunity to examine the damaged property before it is repaired or discarded.

6) Submit a claim form and/or statement describing the loss, together with two estimates of repair cost and/or records to substantiate the amount of the loss.

7) Neither assume obligation, nor admit liability without our written permission to do so.

8) Immediately forward to us any legal papers or notices received in connection with the loss.

9) Cooperate with us in the investigation, defence or settlement of any loss and agree to be examined under oath if we so request

10) Allow examination by physicians of our choice.

11) Assist us in obtaining copies of medical records and reports.

12) Give us a notarised statement or statutory declaration if we so request.

13) Give us a proof of loss and discharge of liability once the amount of the claim under this insuring agreement has been agreed with you.

14) Preserve any right of recovery from others. When we pay a loss, your right to recover becomes ours up to the amount of our payment together with any legal fees and expenses You must also co-operate with us to recover the losses we may pay. Any amounts recovered from others belong to us up to the amount of our payment together with any legal fees and expenses.

## 11. Service Of Suit Clause

It is agreed that in the event of the failure of the Underwriters severally subscribed to this insurance (The Underwriters) to pay any amount claimed to be due hereunder. the Underwriters. at the request of the Assured. will submit to the jurisdiction of a court of competent jurisdiction within the United States of America.

Notwithstanding any provision elsewhere in this insurance relating to jurisdiction. it is agreed that the Underwriters have the right to commence an action in any court of competent jurisdiction in the United States of America. and nothing in this clause constitutes or should be understood to constitute a waiver of the Underwriter's right to remove an action to the United States Federal District Court or to seek remand therefrom or to seek a transfer of any suit to any other court of competent jurisdiction as permitted by the laws of the United States of America or any state therein.

**TLD/3/PPO**                                                                 Page 11 of 12

Subject to the Underwriters rights set forth above:

a)    It is further agreed that the Assured may serve process upon any senior partner in the firm of:

Goldman & Hellman
730 Fifth Avenue, 9th Floor
New York
NY 10019

and that in any suit instituted against any one of them upon this contract the Underwriters will abide by the final decision of the Court or any Appellate Court in the event of an appeal.

b)    The above named are authorised and directed to accept service of process on behalf of Underwriters in any such suit and/or upon request of the Assured to give written undertaking to the Assured that they will enter a general appearance upon the Underwriters behalf in the event such a suit shall be instituted.

c)    The right of the Assured to bring suit as provided herein shall be limited to a suit brought in its own name and for its own account. For the purpose of suit as herein provided the word Assured includes any mortgage under a ship mortgage which is specifically named as a loss payee in this insurance and any person succeeding to the rights of any such mortgage.

d)    Further, pursuant to any Statute of any State, Territory or District of the United States of America which makes provision therefore, Underwriters hereby designate the Superintendent, Commissioner or Directors of Insurance or any other officer specified for that purpose in the statute, or his successor or successors in office (The Officer) as their true and lawful attorney upon may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above named as the person to whom the Officer is authorised to mail such process or true copy thereof.

Clause 11 above is subject, in all respects to clause 12 hereafter.

### 12. CHOICE OF LAW

It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the state of New York.



**BLACK HAWK**

*Performance & Fishing Boats*

e-mail: usablack@bellsouth.net

2300 N.W. 147 ST. MIAMI, FL 33054

OFFICE: 305-769-9221   FAX: 305-769-9133

February 18th 2005

Orestes Fernandez Jr.
270 SW 81 Ave.
Miami, Fl. 33144

      Re. Boat:       32' Seahawk  Hull ID # IT030030H405
      Manufacturer:  Black Hawk USA, Inc.

Recommended motors: 2
Motors installed: 3

Client: Orestes Fernandez Jr.

Third motor, a Verado 250 Supercharged Mercury, installed under the client's responsibility. We, Black Hawk USA recommend only 2 motors for this type of boat.

Therefore neither we, Black Hawk USA, nor the officers or shareholders deem responsibility for third motor installed. Nor are we responsible for the performance or handling of the above mentioned vessel.

Orestes Fernandez

Luis Sierra



EXHIBIT
"B"

NEW ADDRESS FOR:
Performance Marine Associates
2525 Marina Bay Dr West Suite 204
Ft Lauderdale, FL 33312-7701


**TLDallas**
*Insurance since 1919*

T L Dallas (Special Risks) Ltd

## YACHT APPLICATION

| INSUREDS NAME ORESTES FERNANDEZ, JR | INSUREDS AGE 45 | DATE 4-18-2005 | PRODUCER CODE |
|---|---|---|---|
| MAILING ADDRESS P.O. Box 558848 | | PRODUCER NAME | NEW ADDRESS FOR: |
| CITY MIAMI  COUNTY  STATE FL  ZIP 33125 | | PRODUCER ADDRESS | Performance Marine Associates 2525 Marina Bay Dr West Suite 204 Ft Lauderdale, FL 33312-7701 |
| PHONE 305-904-0000  HOME  BUSINESS 786-709-3248 | | PHONE | |

| OCCUPATION PHYSICIAN | LIENHOLDER INFORMATION  ✓ FLORIDA |
|---|---|
| VESSEL NAME "OUTTA CONTROL" | NAME EASTERN FINANCIAL CREDIT UNION |
| EFFECTIVE DATE FROM 4-19-05 TO 4-19-06 | NUMBER & STREET P.O. Box 82957  822300 |
| LAID UP FROM  TO  ON SHORE AFLOAT | CITY SOUTH FLORIDA  STATE FL  ZIP CODE 33082-2957 |

### COVERAGE WILL NOT BE PROVIDED UNLESS REQUESTED HEREON

| COVERAGES | SUM INSURED | EQUIPMENT | | PRIMARY POWER | | SAIL | |
|---|---|---|---|---|---|---|---|
| HULL - PHYSICAL DAMAGE | 130.000 | BILGE PUMPS | | AUX GENERATOR DIESEL | | OUTBOARD | X |
| TENDER / DINGHY | — | COOKING STOVE | | EPIRB | | INBOARD | |
| LIABILITY COVERAGE | 300.000 | FLAME DETECTOR | | ENGINE ALARM | | INBOARD/ OUTDRIVE | |
| CREW LIABILITY | — | CO2/HALON SYSTEM | | LIFE RAFT | | OTHER | |
| OWNER OPERATOR M&C | — | FIRE EXTINGUISHERS | X | SONAR | | TYPE OF HULL | SAILBOAT | |
| MEDICAL PAYMENTS | 5.000 | ANTI-THEFT DEVICES | | GPS | X | | PERFORMANCE | |
| COMMERCIAL PASSENGER LIABILITY | — | DEPTH SOUNDER | | OTHER (LIST BELOW) | | | RUNABOUT | X |
| UNINSURED BOATER | 25.000 | RADAR | | | | HULL MATERIAL | WOOD | |
| TRAILER | 5.000 | LORAN/DIRECTION FINDER | | | | | METAL | |
| PERSONAL PROPERTY | — | SHIP TO SHORE RADIO | X | | | | FIBREGLASS | X |
| NON-EMERGENCY | — | SATNAV/OMEGA | | | | FUEL TANK | METAL | |
| OTHER | — | AUX GENERATOR GAS | | | | | FIBREGLASS | |

| VESSEL INFORMATION | YEAR 2005 | LENGTH 31 | DATE PURCHASED 2-1-2005 | PURCHASE PRICE 135.000 | PRESENT VALUE 130.000 | MAX SPEED 60 | REGISTRATION NUMBER FLA325 MS |
|---|---|---|---|---|---|---|---|
| HULL IDENTIFICATION NUMBER | ITO30030H405 | | | MANUFACTURER/MODEL BLACKHAWK SEA HAWK | | | |
| TENDERS OR DINGHIES: | | | | STORED AT (CITY, OO, ETC): HOME - IN DRIVEWAY - FENCED 270 SW 81ST AVE MIAMI, FL 33144 | | | |
| ANTI-THEFT PRECAUTIONS: LOCKED FENCED AREA | | | | | | | |
| WATERS TO BE NAVIGATED: FLORIDA COASTAL WATERS | | | | | | | |

| WILL VESSEL BE LOCATED BETWEEN 12°40' - 25° NORTH AND 55° - 85° WEST DURING THE PERIOD JULY 1ST - NOV 1ST | YES NO |
|---|---|

### ENGINE/OUTBOARD MOTOR INFORMATION

| ENG | H.P. | GASOLINE | DIESEL | YEAR | DATE PURCHASED | PURCHASE PRICE | PRESENT VALUE |
|---|---|---|---|---|---|---|---|
| 1 | 250 | X | | 2005 | 2-1-2005 | INC'D | INC'D |
| 2 | 250 | X | | 2005 | " | " | " |
| 3 | 250 | X | | 2005 | " | " | " |

| | MANUFACTURER/MODEL | | SERIAL NUMBER |
|---|---|---|---|
| 1 | MERCURY  250XXL | | 1B045787 |
| 2 | MERCURY  250CXL | | 1B056536 |
| 3 | MERCURY  250XXL | | 1B045690 |

| DATE VESSEL LAST SURVEYED | | | ASHORE AFLOAT |

321 C 20 X 3X

HW  PT
HISUN  = 5M
= 5M  = 10MP
= 12 MP

EXHIBIT "C"

| TRAILER INFORMATION | | YEAR 2005 | DATE PURCHASED 2-1-2005 | PURCHASE PRICE 5-000 | PRESENT VALUE 5-000 |
|---|---|---|---|---|---|
| MANUFACTURER/MODEL: Real Extreme | | | SERIAL NUMBER: 1E9BB34315M322055 | | |
| DETAILS OF PREVIOUS VESSELS OWNED: 24' Jaws , 28' Anacapa | | | | | |
| | | | | | |
| | | | | | |

### OPERATORS (ALWAYS LIST INSURED AS OPERATOR # 3)

| # | NAME | DATE OF BIRTH | AUTO DRIVERS LICENCE # | STATE | SOCIAL SECURITY # | USCG/POWER SQUADRON CERTIFICATE |
|---|---|---|---|---|---|---|
| 1 | | | | | | |
| 2 | Orestes Fernandez, Jr | 7-2-69 | ** | FL | 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 | |
| 3 | Orestes Fernandez, Sr | 11-24-28 | * | FL | 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 | |
| # | VIOLATIONS/SUSPENSIONS (INCLUDING AUTO) IN LAST 5 YEARS | | | | | YEARS OF BOAT OWNERSHIP |
| 1 | | | | | | |
| 2 | ** F65564069 2420 | | | | | 17 |
| 3 | * F655640284230 | | | | | 10 |

### GENERAL INFORMATION

| # | EXPLAIN ALL "YES" RESPONSES IN REMARKS | YES | NO | # | EXPLAIN ALL "YES" RESPONSES IN REMARKS | YES | NO |
|---|---|---|---|---|---|---|---|
| 1 | IS THE BOAT CHARTERED TO OTHERS WITH CAPTAIN? | | X | 6 | IS THE BOAT USED COMMERCIALLY OR FOR BUSINESS PURPOSES? | | X |
| 2 | IS THE BOAT CHARTERED TO OTHERS WITHOUT CAPTAIN? | | X | 7 | DOES THE APPLICANT EMPLOY A PAID CREW IF SO HOW MANY? | | X |
| 3 | IS THE BOAT USED FOR RACING? | | X | 8 | WAS ANY OPERATOR INVOLVED IN A MARINE LOSS IN THE LAST 10 YEARS (INSURED OR NOT?) | | X |
| 4 | IS THE BOAT USED FOR WATER SKIING OR DIVING? | | X | 9 | WAS ANY COVERAGE DECLINED, CANCELLED OR NON-RENEWED DURING THE LAST 5 YEARS? | | X |
| 5 | IF THE BOAT IS USED FOR FARE PAYING PASSENGER CHARTERS, WHAT IS THE AVERAGE NUMBER OF PASSENGERS PER TRIP ___ NUMBER OF TRIPS PER YEAR ___ | | | | | | |

### REMARKS

| |
|---|
| |
| |
| |
| |
| |
| |

## PLEASE READ BEFORE SIGNING APPLICATION

1. This application will be incorporated in its entirety into any relevant policy of insurance where insurers have relied upon the information contained herein.
2. Any misrepresentations in this application for insurance, will render insurance coverage null and void from inception. Please therefore check to make sure that all questions have been fully answered and that all facts material to your insurance have been disclosed, if necessary by a supplement to the application.
3. A photograph of the vessel is required to be submitted with this application.

## NOTICE:

The normal procedure used by the company to evaluate applications may include obtaining an investigation consumer and credit report involving information on such things as charter, general reputation, personal characteristics and mode of living. Information on the nature and scope of such a report, if one is made, will be given to you upon request.

| APPLICANT SIGNATURE: | SIGNATURE DATE: 4-18-2005 |
|---|---|

# TLD/3/PPO "FAQ" PAGE (FREQUENTLY ASKED QUESTIONS)

This quote and "FAQ" page are a general reference only to frequently asked questions about what coverage(s) the insurance policy or policies would provide and are not intended to attempt to describe all of the various details pertaining to the insurance. Actual coverage is detailed only in the policy of insurance and are at all times subject to all terms, provisions, conditions and exclusions as contained therein.

1. NOTE: This excess company is **NOT an admitted company** and as such is not part of your state's insurance guarantee fund.

2. This policy quote represents an **AGREED VALUATION** policy. The hull deductible applies to any partial loss but NOT to a total loss or constructive total loss. Policy wording is subject to named exclusions. See policy for details. **UNDERWATER DAMAGE** to vessel's machinery (engine(s), propeller(s), shaft(s) and drive(s)) IS covered but this coverage is subject to the policy's and the vessel age limitations for vessel's over 10 years of age. Depreciation is applied.

3. ___ (<<<<<<< **Please Initial**) This is a **Named Operator Policy**. In order for coverage to be in place, any and all vessel operators must be named on the application with their date of birth, drivers license number & issuing state..

4. List your vessel normal mooring or storage locations:
Please provide the exact & full address of your boats **SUMMER/IN USE LOCATION**:
Name of Location __HOME OF OPISZCA, JR__ (circle one) marina > (residence)
Street Address __270 SW 81ST AVE__ (circle one) hauled > afloat
City __MIAMI__, State __FL__ Zip __33144__ (circle one) inside > outside
(circle all that apply) trailer > dry rack > slip > lift > locked & fenced area > open area > blocks > other (specify) _____

Please provide the exact & full address of your boats **WINTER or STORAGE LOCATION**:
Name of Location __SAME__ (circle one) marina > residence
Street Address _____ (circle one) hauled > afloat
City _____, State _____ Zip _____ (circle one) inside > outside
(circle all that apply) > trailer > dry rack > slip > lift > locked & fenced area > open area > blocks > other (specify) _____

5. \*\*\* ___ (<<<<<<< **Please Initial**) Losses or damage to the insured vessel arising from a **Named Windstorm** shall be subject to a **DOUBLE deductible**, which shall apply to each and every claim including a total loss of the insured vessel.

**NOTE: THE FOLLOWING RESTRICTIONS APPLY ON THEFT COVERAGES:**

6. \*\*\* ___ (<<<<<<< **Please Initial**) While the scheduled vessel is on a trailer the coverage is restricted to theft of the entire scheduled vessel including its equipment from a locked garage or locked storage building or a locked fenced enclosure. If secured to a vehicle it must be secured with a trailer ball lock. It is understood and agreed that this insuring agreement does not cover loss or damage caused by the theft of your vessel and/or equipment while stored on a trailer unless occasioned by person or persons making forced entry into the locked fenced enclosure, garage or building and by destruction of the ball lock. Actual force and violence of which there shall be visible marks made by tools, explosives, electricity or chemicals must accompany theft.

7. ___ (<<<<<<< **Please Initial**) In any event of theft loss a deductible of 10% of the agreed hull value of the scheduled vessel and/or equipment is to apply to each theft loss, including total loss of the scheduled vessel.

8. ___ (<<<<<<< **Please Initial**) However, a lower deductible of 5% of the agreed hull value of the scheduled vessel shall apply to each theft loss including a total loss where the scheduled vessel is stored or moored in a recognized commercial storage yard or a marina.

9. ___ (<<<<<<< **Please Initial**) It is warranted that the schedules vessel shall be used solely for private and pleasure use only. Liability excludes paid crew or employees of the Assured or fare paying passengers unless stated. This policy is warranted for a max speed of _60_ MPH. Limited water-skiing liability coverage for towing persons in the water.

10. The Standard Land Transit trailering range is limited to a 100-mile radius of the vessel's home port. Additional trailer towing range to cover "collision" damage is available for an additional premium.

11. ___ (<<<< Please Initial) No coverage for or during preparation for a racing event, stunting contest or speed trial event.

12. Policy cancellations are subject to a 10-DAY notice. All policies are subject to a 25% minimum earned premium and short rate schedule cancellation. Any fees or taxes are fully earned at the policy's inception and on a total loss.

Please sign and return this page with the attached application.

X _____

RESTES FERNANDEZ , Sr.

DATE 4/18/ 2005

QUOTE # 961-6347

**JS 44** (Rev. 11/05) **CIVIL COVER SHEET** 06 - 21049

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS

GREAT LAKES REINSURANCE (UK) PLC
a foreign corporation

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Jonathan W. Skipp, Esq. (305) 670-2525
Horr, Novak & Skipp, P.A.
9100 S. Dadeland Blvd., Suite 1104
Miami, Florida 33156

**DEFENDANTS**

ORESTES FERNANDEZ, SR., and **CIV - SEITZ**
ORESTES FERNANDEZ, JR.

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY) **McALILEY**

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT
LAND INVOLVED.

Attorneys (If Known)

Lester Rogers, Esq., 1401 NW 17th Ave. Miami, Fl 33125
(305) 324-8880

CASE06 c/21049/Seit2/McAliley

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE
HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government
Plaintiff

☑ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff

(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☑ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case ☐ YES ☑ NO     b) Related Cases ☐ YES ☑ NO

JUDGE _____ DOCKET NUMBER _____

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

28 U.S.C. Sec.2201 et seq.; this is an admiralty and maritime claim for declaratory judgment relief regarding coveree under a policy of marine insurance.
LENGTH OF TRIAL via **2** days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $    CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☑ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE    SIGNATURE OF ATTORNEY OF RECORD    DATE 4/26/06

**FOR OFFICE USE ONLY**
AMOUNT 350 —    RECEIPT 939256    IFP